**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**KATE EGAN, KENNETH BERRY,**
**MICHELLE BRANDT, NICOLE**          Case No.: 23-cv-1148
**GONZALEZ, and AMBER LYNE**
individually, and on behalf of others similarly      Hon.: Matthew F. Kennelly
situated,

               Plaintiff,          Hon.: Susan E. Cox

vs.

**A.W. COMPANIES, INC.**, a Minnesota
Corporation, and **MEIJER, INC.**, a Michigan
Corporation,

               Defendants.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT MEIJER, INC.'S MOTION TO**
**DISMISS WITH PREJUDICE PLAINTIFFS' THIRD AMENDED COMPLAINT**
**AGAINST MEIJER, INC.**

## I.  INTRODUCTION

Defendant Meijer, Inc.'s (hereinafter "Meijer") Motion to Dismiss with Prejudice Plaintiffs' Third Amended Complaint (D.E. 87-88) (the "Motion") asks the Court to decide the merits of Plaintiffs' claims at the pleading stage. More specifically, the Motion asks the Court to decide that Meijer did not jointly employ Plaintiffs and the putative class/collective (the "CCAs"). Regardless of the Motion's title, the ultimate determination of whether Meijer was (or was not) an employer under the state and federal wage statutes at issue is not properly decided at this stage.

In the Motion, Meijer raises just two jurisdictional arguments, both predicated on the court finding, as a matter of law, that they are not a joint employer of the CCAs. First, Meijer claims it did not jointly employ Plaintiffs, so Plaintiffs lack standing (subject matter jurisdiction). Second, "if Meijer did not jointly employ Plaintiffs, it is not subject to personal jurisdiction in this case, regardless of its other contacts." (D.E. 88 at 7-8.) These are not truly jurisdictional arguments. Instead, at best, these arguments challenge the sufficiency of the Plaintiffs' pleadings.

As a third basis for dismissal, Defendant argues that the Third Amended Complaint (D.E. 76) (the "TAC") fails to include factual allegations that, if accepted as true, plausibly establish Meijer jointly employed the CCAs. D.E. 88 at 12. Meijer misunderstands the expansive definitions of an "employer" under the wage statutes at issue. In fact, Meijer inadvertently offers evidence in the Motion that supports Plaintiffs' joint employment allegations.

However, this is not a summary judgment motion. And under the guise of a jurisdictional and sufficiency of pleadings challenge, the Motion attempts to lure Plaintiffs and the Court into a summary judgment analysis. The Seventh Circuit has held that:

> If a defendant's Rule 12 (b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

*Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992). *See also*, *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (holding "this method of treating indirect attacks on the merits as 12(b)(6) motions rather than 12(b)(1) motions properly provides more protection to the plaintiff."). And "whether an entity is liable under the FLSA as a joint employer is a merits issue." *Watson v. Jimmy John's, LLC*, No. 15 C 6010, 2015 WL 8521293, at *3 (N.D. Ill. Nov. 30, 2015). Accordingly, Meijer's Motion is not truly a jurisdictional motion.

Indeed, Meijer's Motion dedicates just one paragraph to discussing subject matter jurisdiction and only one paragraph to analyzing personal jurisdiction. In regard to personal jurisdiction, the Motion asks the Court to disregard any analysis of its contacts with this forum and instead focus on finding, as a matter of law, Meijer did not jointly employ the CCAs.

Additionally, as to Meijer's stated jurisdictional arguments, seeking a dismissal with prejudice under Fed. R. Civ. P. 12(b)(1) and (2) is improper. A jurisdictional motion to dismiss is not a dismissal based on the merits. To the contrary, such a motion asks the court not to decide the merits because it does not have jurisdiction over the claims asserted.

However, for the reasons discussed herein, jurisdiction does exist, and Plaintiffs have sufficiently pled that Meijer jointly employed them. Thus Defendant's Motion is due to be denied.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  Plaintiffs' Joint Employment Factual Allegations in TAC

In the TAC Plaintiffs allege that "Defendants jointly participated in the training, supervision, continuing education, and discipline of the CCAs in the performance of their job duties." (D.E. 76 at ¶ 12.) Additionally, "Defendants both controlled the rate and method of payment for the employees (including CCAs); controlled and dictated their schedule and job duties; and otherwise, exercised control, input, and responsibility for the work hours,

compensation and pay policies at issue in this case." *Id*., ¶ 154.

More specifically, "Meijer provides the platform for call distribution, call center reporting, and management of queues for the performance of the CCAs' work." *Id*., ¶ 157. "Meijers is also involved in the pre-screening of CCAs and has the right at any time and for any reason to reject one or more of the CCAs sought to be used." *Id*., ¶ 158. CCAs are provided with training materials created by Meijer and Meijer provides "subject matter experts" to aid in the creation of the training materials. *Id*., ¶ 159. This includes phone scripts in which the CCAs introduce themselves as Meijers employees over the phone and tell the consumers that they are working from Meijer's Grand Rapids, Michigan headquarters. *Id*., ¶ 162. In fact, CCAs are provided with Meijer email addresses (*e.g.* kegan@meijer.com). *Id*.

Throughout the TAC Plaintiffs allege that Meijer's participated and exercised control over the CCAs' work schedules. *See generally*, D.E. 76, TAC. The TAC further alleges that CCAs were required to comply with Meijer's policy for requesting time off work. *Id*., ¶ 156.

**B. Joint Employment Allegations are Buttressed by the Additional Evidence Submitted**

As a preliminary comment on the procedural posture of the case, the Motion somewhat disingenuously states Plaintiffs "have benefitted from months of discovery." In truth, Meijer has not responded to a single discovery request and co-Defendant A.W. Companies, Inc. ("AWC") has stone-walled many of Plaintiffs' attempts to obtain discovery. The Statement of Work ("SOW") and Amendment to the Master Service Agreement that Meijer submitted in support of its Motion were created long *after* the filing of this lawsuit. Plaintiffs have requested, but still not received, countless pre-litigation documents, including the SOWs that predate this lawsuit. Discovery is far from complete and additional discovery motions are imminent.

Throughout the TAC, Plaintiffs allege Meijer exercised substantial control over the CCAs.

[D.E. 76.] Nonetheless, Meijer's Motion improperly attempts to use extraneous evidence and arguments to disprove Plaintiffs factual allegations related to the merits of their claims. Contrary to Meijer's arguments, Plaintiffs allegations in the TAC are not unfounded and are supported by the limited discovery[1] that has already occurred. For example, consistent with and in support of the allegations in the TAC, Defendants' "Attendance and Scheduling Guidelines" provide that:

**"All timecards are reviewed by Meijer management prior to final approval."**

***Exhibit 1***, Attendance & Scheduling Guidelines. This document also provides numerous examples of how Meijer exerts control over Plaintiffs' daily work activities, including payroll, workstation environment, earnings restrictions, medical leave, work schedules (including a Meijer attendance line) and physicians notes. *Id*. Additionally, throughout the TAC, Plaintiffs allege Meijer participated in the discipline of CCAs. To that end, the Attendance & Scheduling Guidelines set forth a progressive discipline policy wherein Meijer sends emails advising of the applicable "Warning Notice" or "Performance Action" for CCAs. *Id*.

Additionally, Plaintiff Egan submits a declaration, attached as ***Exhibit 1***, wherein she explains that she was required to seek permission from the Meijer quality control team before performing certain tasks including issuing refunds/credits of more than $25.00. In that same vein, according to Plaintiff Egan, Meijer participated and threatened CCAs with discipline for providing Meijer customers with "courtesy coupons" too easily. She also details how she used a Meijer email address and describes an instance where a Meijer employee monitored her call and directed her not to use the word "y'all" when speaking to customers. *Id.*

Similarly, Plaintiff Brandt, who at all relevant times was employed from her home in

---

[1] Recall that Defendant AWC recently agreed to produce emails responsive to the parties' ESI agreement. This concession was only provided in response to Plaintiffs' motion to compel and those emails still have not been received. Only limited written discovery has been completed.

Lasalle County, Illinois, has submitted a declaration, attached as ***Exhibit 2***. Brandt explains in detail that Meijer directed her termination for failing to re-verify the phone number and email address of Meijer customers she assisted, who were transferred to her by Meijer employees. She also verifies that she represented herself as a Meijer employee to customers (at the instruction of Meijer), her calls were monitored by Meijer, and that she worked directly with Meijer employees.

The documents offered by Meijer in the Motion also support Plaintiffs' allegations.

For example, the post litigation SOW offered by Meijer states: "Meijer will provide subject matter experts ("SME") to aide in creating training related to the customer care support services"; "Meijer shall provide a platform for the purposes of call distribution, call center reporting, management of queues, IVR set up and management, call disposition … Meijer and Contractor will provide support personnel for said systems"; "Meijer will provide SME and IT support to Contractor to establish protocols, system setup, configuration, and on-going support". [D.E. 92.]

Additionally, regarding job performance, AWC "shall provide adequate staffing to meet the Key Performance Indicators set forth in section 1.6 on a monthly reporting basis"; "[d]efinitions for all key performance indicators will be monitored using the workforce management system supplied by Meijer"; [a]ny change to the key performance indicators must be agreed upon in writing between Contractor and Meijer." [D.E. 92]

The SOW even establishes that Meijer indirectly sets the manner, method, timing, and rates of payment for the CCAs. Specifically, the SOW states: "Meijer will pay Contractor for the following services"; "[a]gent hours are billed weekly"; "[a]ll hourly rates will be calculated in increments not to exceed fifteen (15) minutes"; "Agent Regular Rate $24.50"; "Agent Overtime Rate $36.75."[2] Additionally, the SOW provides that "[u]pon yearly commencement of Effective

---

[2] These rates are paid to AWC, who takes its cut, then passes the rest down to the CCA. However,

Date, Contractor shall increase the Inbound Agent rates" to account for inflation. [D.E. 92]

Regarding scheduling, Meijer requires CCAs to "provide the Services from 7am EST – 10pm EST daily, excluding Christmas Day yearly. The hours of operation may be modified by Meijer upon thirty days' notice." *Id*. AWC simply schedules between those hours set by Meijer.

### III.    STANDARD OF REVIEW

#### A.  Standard of Review Under 12(b)(1) – Subject Matter Jurisdiction

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *see also*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

A factual challenge contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Apex Dig.*, 572 F.3d at 444. In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists. *Id.* However, a 12(b)(1) motion that challenges the merits of a plaintiff's claims (*e.g.* whether a defendant was in fact an employer), must be treated as a 12(b)(6) motion. *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992). *See also*, *Malak v. Associated Physicians*, *Inc.*, 784 F.2d 277, 280 (7th Cir. 1986).

In contrast, a facial challenge argues that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Id.* at 443 (emphasis in original). In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 443–44.

---

all of the wage statutes at issue contemplate liability for an employer that indirectly pays wages through an intermediary in this manner. The definition of "employ" under the FLSA includes "to suffer or permit to work," and an employment relationship is recognized whenever an individual is suffered or permitted to work, irrespective of the method of payment. 29 C.F.R. § 525.3.

In the Motion, Meijer challenges subject matter jurisdiction on a lack of standing, albeit using an improper summary judgment argument, which is a facial (not factual) challenge to subject matter jurisdiction. *Silha* at 807 F.3d at 173 (holding "in evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.") (internal quotation omitted); *Apex Dig*, 572 F.3d at 443 (holding "to survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff need only show the existence of facts that could, consistent with the complaint's allegations, establish standing."). S*ee also*, D.E. 88, Motion at 7-8 (arguing "If Meijer did not jointly employ Plaintiffs, they do not have standing to bring their claims.").

No other argument for dismissal under 12(b)(1) was raised by Meijer in the Motion.[3]

## B. Standard of Review Under 12(b)(2) – Personal Jurisdiction

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) 'tests whether a federal court has personal jurisdiction over a defendant.'" *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 884 (N.D. Ill. 2020), *quoting United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). The Seventh Circuit has held:

> The plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. At this stage, therefore, we take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff.

*Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also*, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021) (holding that on a motion to dismiss for lack of personal jurisdiction, the

---

[3] Any new theory for dismissal raised in the reply brief is waived. "Arguments may not be raised for the first time in a reply brief." *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008).

court must accept as true all factual allegations in Plaintiffs' complaint.); *In re Sheehan*, 48 F.4th 513, 520 (7th Cir. 2022) (same). Thus, like the analysis under Rules 12(b)(1) and 12(b)(6), the Court must accept as true all of Plaintiffs' factual allegations and resolve disputes in their favor.

A court's exercise of personal jurisdiction may be limited by the applicable state statute or the federal Constitution; the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, 735 Ill. Comp. Stat. 5/2–209(c), so here the state statutory and federal constitutional inquiries merge. *Tamburo, 700; citing Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008).

### C. Standard of Review Under 12(b)(6) – Failure to State a Claim

When evaluating a motion to dismiss under 12(b)(6), failure to state a claim, the Court must "treat the complaint's factual allegations as true and draw every factual inference in the plaintiff's favor." *Kahn v. Walmart Inc.*, No. 23-1751, 2024 WL 3282097, at *3 (7th Cir. July 3, 2024). A plaintiff "need to show only that the claim is plausible on its face and that, if the allegations are true, the plaintiff is entitled to relief." *Id.*

"This pleading standard requires plaintiffs to allege only enough facts to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Id.*, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 556.

## IV. ARGUMENT

### A. The Issue of Joint Employment is *Not* Decided at the Pleading Stage and is *Not* a Jurisdictional Challenge – it is a Challenge to the Merits of Plaintiffs' Claims

The determination of whether Meijer is a joint employer under the FLSA "is a question of law." *Karr v. Strong Detective Agency, Inc., a Div. of Kane Servs.*, 787 F.2d 1205, 1206 (7th Cir.

1986), citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983). And "[t]he issue of whether an entity is a joint employer is generally unsuitable for resolution at the motion to dismiss stage because it involves a fact-intensive inquiry that typically requires further development through discovery." *Nor v. Alrashid*, No. 20 C 7470, 2022 WL 815542, at *6 (N.D. Ill. Mar. 17, 2022).

Furthermore, "courts treat the issue of whether a Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, defendant is an employer or a joint employer as an element of plaintiff's claim, not as a jurisdictional requirement." *Gross v. Peoples Gas Light & Coke Co.*, No. 17-CV-3214, 2018 WL 558515, at *1 (N.D. Ill. Jan. 24, 2018), *citing Brown v. ABM Indus., Inc.*, No. 15 C 6729, 2015 WL 7731946, at *3 (N.D. Ill. Dec. 1, 2015) (holding "the FLSA's definition of employer under 29 U.S.C. § 203(s) does not suggest that it is jurisdictional, but instead, it is an element of a plaintiff's claim."); *Torres v. Pallets 4 Less, Inc.,* No. 14 CV 4219, 2015 WL 920782, at *3 (N.D. Ill. Mar. 2, 2015) (collecting cases).[4] And the Seventh Circuit has treated joint-employment questions under Title VII as merits issues, reviewing the propriety of summary judgment, rather than as jurisdictional matters. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928–30 (7th Cir. 2017). *See also*, *Saperstein v. Hager*, 188 F.3d 852, 855 n.1 (7th Cir. 1999) (holding "failure to meet the statutory definition of an employer in a Title VII or ADEA context is not a defect of subject matter jurisdiction but an ordinary failure to meet a statutory requirement.").

In *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), the Supreme Court held that the issue of whether a party is an "employer" under Title VII was an element of the party's claim – not a jurisdictional requirement. *See id.* at 516. In particular, the

---

[4] The Illinois Minimum Wage Law and the Wage Payment and Collection Act both contemplate joint employers. See, *Zampos v. W & E Commc'ns, Inc.*, 970 F. Supp. 2d 794, 806 (N.D. Ill. 2013) ("the test for determining whether a joint-employment relationship exists under the IWPCA is not entirely different than the FLSA and IMWL.".

Supreme Court noted that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief – a merits-related determination." *Id.* at 511

Accordingly, "the question of whether individual defendants are, in fact, joint employers is typically addressed at the decertification or summary judgment stage." *Dye v. Knight Hawk Holdings, LLC*, No. 23-CV-1329-DWD, 2024 WL 3088631, at *5 (S.D. Ill. June 21, 2024).

## B. Meijer's Subject Matter Jurisdiction Argument Should Be Treated as Challenge to the Sufficiency of the Pleadings Under Fed. R. Civ. P. 12(b)(6)

"Within this district the court has repeatedly held that '[w]hether plaintiffs fall within the protection of the FLSA is an issue regarding the merits of their claims, not the court's jurisdiction.'" *Martinez v. Citizen's Taxi Dispatch, Inc.*, No. 16 CV 10389, 2017 WL 2311231, at *2 (N.D. Ill. May 26, 2017); *citing Rivera v. Heights Landscaping, Inc.*, No. 03 CV 6428, 2004 WL 434214, at *1 (N.D. Ill. March 5, 2004); *Torres* 2015 WL 920782, at *3; *Rivas v. Marcelo Hand Car Wash, Inc.*, No. 10 CV 1396, 2010 WL 4386858, at *1 (N.D. Ill. Oct. 28, 2010).

As stated above, when a defendant indirectly attacks the merits of a plaintiffs' claims under the guise of a jurisdictional motion to dismiss, as Meijer has done in its Motion, the court must treat the motion to dismiss as a Rule 12(b)(6) motion. *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992); *Malak v. Associated Physicians*, *Inc.*, 784 F.2d 277, 280 (7th Cir. 1986); *Martinez*, 2017 WL 2311231, at *2; *Brown*, 2015 WL 7731946, at *3.

Plaintiffs have adequately alleged that Meijer was a joint employer, so Meijer's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is due to be denied.

## C. The Ultimate Legal Finding that an Employment Relationship Exists is *Not* a Prerequisite to Finding Personal Jurisdiction

The only argument it raised in the Motion relative to personal jurisdiction is that "if Meijer

did not jointly employ Plaintiffs, it is not subject to personal jurisdiction in this case, regardless of its other Illinois contacts." D.E. 88 at 15. Again, this argument puts the cart before the horse.

"As with a Rule 12(b)(6) motion, the Court must 'accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff" when evaluating personal jurisdiction.'" *In re Sheehan*, 48 F.4th 513, 520 (7th Cir. 2022), *quoting St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

### 1. General Personal Jurisdiction Exists

The Motion inaccurately states general personal jurisdiction only exists in the state of incorporation or the principal place of business. Motion at 8. "A defendant with 'continuous and systematic' contacts with a state is subject to general jurisdiction there in any action, even if the action is unrelated to those contacts." *Tamburo* 601 F.3d at 701, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

### 2. Specific Personal Jurisdiction Exists

There are three "essential requirements" for the exercise of specific jurisdiction over an out-of-state defendant:

> First, the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020), *quoting Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir.2019); *see also Tamburo*, 601 F.3d at 702.

Here, Meijer has unquestionably availed itself to the privilege of conducting business in the forum state and purposefully directed its activities at the state. First, Meijer registered to do business in this state and does in fact do business in the state. Additionally, accepting Plaintiffs'

factual allegations in the TAC regarding their relationship with Meijer as true, and considering the additional evidence consistent with those allegations, Plaintiffs have sufficiently alleged that Meijer has purposefully availed itself of the privilege of conducting business in Illinois. *See*, ***Exhibit 1-3***; D.E. 92. It must also be said that the more than 25 stores Meijer maintains in Illinois and the employees employed therein, and the Illinois consumers that shop therein, are not unrelated to Plaintiffs' claims. Plaintiffs job duties are to assist those Illinois shoppers and employees, and Plaintiffs claims arise out of the performance of those duties for Meijer. *See generally*, TAC.

Next, since the alleged injury arose out of Meijer's employment of CCAs (the forum related activity), the second factor of the specific personal jurisdiction analysis is easily met. In fact, as explained in Plaintiff Brandt's declaration, she was fired at the instruction of Meijer while working as a CCA in this District because she did not follow Meijer's call protocols. Exhibit X, at ¶ X.

Third, there is no unfairness in making Meijer defend an employment lawsuit brought by individuals it employed in this state. As Your Honor recently noted, "the Seventh Circuit has found that there is no unfairness in making a foreign entity 'defend a suit in a state where it structured its business to easily serve the state's consumers.'" *Fairly Odd Treasures, LLC v. P'ship & Unincorporated Associations Identified in Schedule "A"*, 2024 WL 1639815, at *2 (N.D. Ill. Apr. 16, 2024), *quoting NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022).

In *Grant-Overton v. Fort Wayne Urb. League, Inc.*, No. 1:20-CV-0128 HAB-SLC, 2021 WL 1549736 (N.D. Ind. Apr. 20, 2021) the court was faced with a factually similar personal jurisdiction analysis in a joint employment situation. In *Grant*, the court held:

> the Court is compelled to conclude that the conflicts in the evidence are sufficient for Plaintiff to meet her burden of making a prima facie case that specific personal jurisdiction exists … this evidence is not overwhelming; indeed, NUL may very well demonstrate at summary judgment that it had no hand in the Plaintiff's employment with FWUL and any communications it had with FWUL regarding Plaintiff's employment were merely advisory or part of its oversight

responsibilities. But, for now, Plaintiff is not required to prove her case; she must only make a *prima facie* showing that personal jurisdiction is warranted … NUL, through its communications, input, and contacts with FWUL in Indiana, purposely directed activities in Indiana relating to Plaintiff's employment and Plaintiff's injury allegedly arose from those forum-related contacts. As such, exercising jurisdiction over NUL does not offend the traditional notions of fair play and substantial justice.

Finally, if the Court finds that it cannot exercise jurisdiction over Meijer, dismissals for lack of personal jurisdiction or subject matter jurisdiction are dismissals without prejudice because it is not a dismissal on the merits. *Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 577 (7th Cir. 2022). If the case is dismissed for lack of jurisdiction, then Plaintiffs will promptly refile a case against Meijer in the Western District of Michigan.

### D. Plaintiff Has Stated a Claim Upon Which Relief Can Be Granted

For purposes of addressing Meijer's challenge to the sufficiency of the joint employment allegations in the TAC, it is helpful to review the expansive definition of employer under the Fair Labor Standards Act ("FLSA").

'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee.

29 U.S.C. § 203(d). "It is well recognized that under the FLSA the statutory definitions regarding employment are broad and comprehensive in order to accomplish the remedial purposes of the Act." *Sec'y of Lab., U.S. Dep't of Lab. v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). The state wage statutes at issue (including Illinois statutes) have similarly broad definitions of employer. For example, of the Illinois Wage Payment and Collection Act ("IWPCA") defines employer as:

any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed.

820 Ill. Comp. Stat. Ann. 115/2. *See also*, *e.g.*, 820 Ill. Comp. Stat. Ann. 105/3.

As illustrated by the above exemplary definitions of "employer," an employer that indirectly exercises control over an employee is an employer. The Motion mistakenly argues that because Meijer allegedly did not directly hire, fire, or pay the CCAs, it cannot be deemed an employer. That assertion is false. *See*, 29 U.S.C. §203(g) (defining "Employ" as "to suffer or permit to work"). In fact, "[p]ayment of employees is not one of the factors courts need consider in determining whether there is joint employment." *Gross v. Sec. Assocs. Int'l, Inc.*, No. 09 CV 3095, 2009 WL 3837435, at *7 (N.D. Ill. Nov. 17, 2009).

"The Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA." *Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). Under these tests, enumerated in greater detail below, a court generally must examine the "economic reality" of the relationship. *Id.* at 808. *See also*, *Kim v. StoneX Grp. Inc.*, No. 22-CV-02392, 2022 WL 17082574, at *2 (N.D. Ill. Nov. 18, 2022) (same).

In the Seventh Circuit, "for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008).

In assessing the existence of a joint employment relationship under the IWPCA, the Illinois Supreme Court employs a similar test. Relevant factors include the "putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." *Kim*, 2022 WL 17082574, at *2.

Under Fed. R. Civ. P. 12(b)(6), a defendant moving for dismissal is not permitted to use

extraneous evidence. "A plaintiff, however, has much more flexibility in opposing a Rule 12(b)(6) motion." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012). "In the district court, too, a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Id.*

Here, the allegations in the TAC alone establish that Meijer had significant control over virtually every aspect of the CCA's working conditions including: training, daily job performance, discipline (including termination), and compensation. [D.E. 76.] In fact, the Meijer's own affidavit acknowledges that "Meijer has sometimes asked A.W. to remove that agent from the Meijer account." [D.E. 89 at ¶ 15.] Plaintiff Brandt is well aware of this fact, as she was fired at the request Meijer. ***Exhibit 2***, Brandt Decl. at ¶ 5. Additionally, the facts set forth in Section II of this Opposition, the attachments hereto, and the evidence offered by Meijer all support that Plaintiffs have sufficiently alleged a joint employment relationship with Meijer.

Additionally, the Motion seeks to have all of Plaintiff Egan's claims against Meijer dismissed pursuant to an unexplained statute of limitations argument. However, "[t]he IWPCA has a ten year statute of limitations." *House v. Illinois Bell Tel. Co.*, 148 F. Supp. 3d 701, 705 (N.D. Ill. 2015). At a minimum, her IWPCA claim is timely. However, dismissal of her other claims is also premature because if discovery reveals Meijer knew or should have known about this lawsuit, then the TAC will relate back to the initial filing, pursuant to Fed. R. Civ. P. 15.

Finally, Meijer argues that Plaintiffs improperly named the parent company. As it stands, Plaintiffs have adequately alleged claims and jurisdiction over Meijer, Inc. Meijer's argument mistakenly assumes that the MSA is determinative of the employment relationship. However, Plaintiffs do not want to delay this case any further, so they are amenable to meeting and conferring with Meijer regarding substituting the correct corporate entity pursuant to Fed. R. Civ. P. 15(c).

Dated: July 18, 2024          Respectfully Submitted,

**ASH LAW, PLLC**

*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877) (*Admitted*)
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 027777) (*Admitted*)
55 E Monroe Street, Suite 3800
Chicago, IL 60603
Phone: (954) WORKERS
AFrisch@fortthepeople.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*Admitted*)
126 S. Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Charles R. Ash, IV*
Charles R. Ash, IV