**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KATE EGAN, KENNETH BERRY, MICHELLE BRANDT, NICOLE GONZALEZ, and AMBER LYNE, Individually, and on behalf of others similarly situated,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 23 C 1148** |
| **vs.** | ) ) | |
| **A.W. COMPANIES, INC., a Minnesota Corporation, and MEIJER, INC., a Michigan Corporation,** | ) ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Kate Egan, Kenneth Berry, Michelle Brandt, Nicole Gonzalez, and Amber Lyne have filed suit individually and on behalf of others similarly situated against defendants A.W. Companies, Inc. and Meijer, Inc. Plaintiffs assert claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b); the Illinois Minimum Wage Law (IMWL), 820 Ill. Comp. Stat. 105/12(a); the Illinois Wage Payment and Collection Act (IWPCA), 820 Ill. Comp. Stat. 115/14(a); the Iowa Wage Payment Collection Law (IWPCL), Iowa Code Ann. § 91A.3(1)(b); the Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. § 177.27; the Minnesota Payment of Wages Act (MPWA), Minn. Stat. § 181.101; and the Wisconsin Wage Payment and Collection Law (WPCL), Wis. Stat. § 109.11(2)(a). Plaintiffs also have sought leave to file a fourth amended complaint including a retaliation claim against A.W. arising from A.W.'s assertion of a

counterclaim against the plaintiffs.

Defendant Meijer, which was first named in plaintiffs' third amended complaint, has moved to dismiss. Meijer seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, under Rule 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

For their part, plaintiffs have moved to dismiss A.W.'s counterclaim under the Illinois Citizen Participation Act (ICPA), 735 Ill. Comp. Stat. § 110/15, and Rule 12(b)(6).

The Court will address Meijer's motion first and plaintiffs' motion second.

## Background

This case arises from a dispute regarding A.W. and Meijer's alleged failure to pay the plaintiffs and those similarly situated for all the time they worked. The plaintiffs are Contact Center Agents (CCAs)—remote, hourly workers who field calls from Meijer customers regarding various issues concerning Meijer's website and retail stores. Plaintiffs assert that A.W. and Meijer have failed to properly pay them for time spent loading and logging into computer systems. A.W. has asserted a counterclaim against plaintiffs for breach of contract for failing to properly and completely report the hours they claim to have worked.

### A.    Plaintiffs' suit against A.W. and Meijer

A.W. Companies offers, among other things, call center services that outsource its employees to provide live, telephonic customer support to various businesses. Meijer is one such business. The specific parameters of A.W.'s services to Meijer are outlined in a Statement of Work, which sets forth requirements for how CCAs should

2

handle calls from Meijer customers.

The thrust of plaintiffs' claims are that A.W. and Meijer fail to properly pay CCAs for overtime by forcing them to work off-the-clock to complete necessary tasks pre-shift, post-shift, and during unpaid meal periods.  Specifically, plaintiffs allege that A.W. and Meijer require all CCAs to be "call-ready no more than 1–2 minutes after the start of their scheduled shift."  Third Am. Compl. ¶ 94.  To be call-ready, CCAs are required to turn on and log into their A.W.-issued computers, connect to the virtual private network (VPN), log into numerous work-related programs, and review e-mails containing work instructions for the day, program updates, and promotions.  *See id.* ¶¶ 105–106. Plaintiffs assert that the entire pre-shift process—all of which occurs before CCAs clock in—takes between "fifteen (15) to twenty (20) minutes per day, and the tasks can take longer if CCAs experience technical problems with the computer, software, and/or applications."  *Id.* ¶ 104.  Plaintiffs allege they are also required to return early from their unpaid lunch breaks "to perform at least part of the boot up process" required pre-shift. *Id.* ¶ 114.  According to plaintiffs, this takes roughly two to five minutes but can take longer "when CCAs are required to do a complete reboot" of their devices.  *Id.* ¶ 115. Finally, plaintiffs assert that A.W.'s policies prohibit CCAs from "begin[ning] the shutdown and logout process until their scheduled shifts end and they complete their last fielded call," thus requiring them to spend another two to three minutes to shut down and log out of their devices after their shifts have ended.  *Id.* ¶ 119.  According to plaintiffs, "A.W. Companies's employee handbook instructs CCAs to record time on their timecards *consistent with their scheduled hours*" and "threatens CCAS with discipline, including possible termination, if they do not report *their scheduled hours* on their

timecards." *Id.* ¶ 123 (emphasis added).  Because the pre-shift work is not part of their "scheduled hours," plaintiffs contend, they are effectively forced to underreport their hours by approximately fourteen to twenty-three minutes per shift.  For an average five-shift, forty-hour workweek, this totals to roughly an hour or two of lost wages per week—all of which would be overtime pay at an enhanced hourly rate.

Though plaintiffs' paychecks come from A.W., they allege that A.W. and Meijer are joint employers and that as a result, both are liable for unpaid overtime wages under the FLSA and similar state wage laws.  In this regard, plaintiffs specifically assert that Meijer is involved in the pre-screening process for CCAs and "has the right at any time and for any reason to reject" a CCA from being staffed on Meijer's account with A.W.  *Id.* ¶ 158.  Once staffed on the Meijer account, plaintiffs contend, they are required to adhere to Meijer's training materials and protocols for requesting time off work. Plaintiffs further allege that A.W. provides Meijer with performance metrics for each CCA working with its customers, including plaintiffs.  In addition, according to plaintiffs, Meijer provides "the platform for call distribution, call center reporting, and management of queues" that CCAs use to assist Meijer customers.  *Id.* ¶ 160.  Plaintiffs further contend that Meijer provides CCAs with Meijer e-mails and phone scripts, which direct CCAs to "introduce themselves as Meijer agents to customers" and "represent to Meijer customers that they are located at Meijer's headquarters in Grand Rapids, Michigan." *Id.* ¶ 162.  Finally, plaintiffs contend that they are subject to performance reviews and discipline by both A.W. and Meijer.  Plaintiff Brandt specifically contends that she was terminated at Meijer's direction following two negative performance reviews.

**B.      A.W.'s counterclaim**

As indicated earlier, A.W. has asserted a counterclaim against plaintiffs. According to A.W., its employee handbook "contains promises that are clear enough that an employee would reasonably believe that an offer of commencing and/or continuing employment has been made."  Def. A.W.'s Ans. and Countercl. ¶ 14.  By continuing to work for A.W. after reviewing the employee handbook, A.W. contends, plaintiffs have accepted the offer to work under the conditions set forth in the handbook. And the handbook, A.W. alleges, requires CCAs "to accurately report all hours worked" so that A.W. can properly bills its clients for the corresponding work of the CCAs.  *Id.* ¶ 21.  Because plaintiffs allege they engaged in off-the-clock work that they did not report on their timecards, A.W. asserts, they have breached their contractual obligations. Accordingly, A.W. seeks damages from plaintiffs for losses accrued due to A.W.'s asserted inability to bill clients for plaintiffs' unreported hours.

## Discussion

**A.      Meijer's motion to dismiss**

Meijer seeks dismissal of plaintiffs' claims against it under Rules 12(b)(1), 12(b)(2), and 12(b)(6).  The Court will address each argument in turn.

### 1.      Standing

Meijer first asserts that plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Specifically, Meijer contends that plaintiffs lack standing to bring their claim against Meijer "[b]ecause Plaintiffs cannot show Meijer jointly employed them with A.W."  Def. Meijer, Inc.'s Mem. in Supp. of Mot. to Dismiss at 7.  Standing is a threshold requirement to establish subject matter

jurisdiction "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must establish that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision." *Id.*

Meijer contends that it is not plaintiffs' joint employer and thus plaintiffs lack standing to sue them. Meijer supports its motion with evidentiary materials outside the complaint that, it contends, establishes that given the facts as set out in those materials, it cannot be considered plaintiffs' joint employer. That's an argument about the merits; it's not legitimately an argument about standing. In arguing otherwise, Meijer relies on the Seventh Circuit's statement in *Berger v. NCAA*, 843 F.3d 285 (7th Cir. 2016), that, under the FLSA, "alleged employees' injuries are only traceable to, and redressable by, those who employed them." *Id.* at 289 (internal quotation marks and citation omitted). Meijer contends that because, as a factual matter, it does not employ the plaintiffs, the traceability and redressability requirements for standing are not met. Meijer then attempts to take advantage of the fact that a party seeking dismissal under Rule 12(b)(1) for lack of standing may assert a "factual" challenge and rely on evidence outside the pleadings, and it supports its motion with affidavits and documentary evidence.

*Berger* does not support the rather immense weight that Meijer seeks to place on it. In that case, the plaintiffs were college athletes at the University of Pennsylvania. They named as defendants not only Penn, but also the NCAA and over 120 other universities and colleges. The district court concluded that the plaintiffs lacked standing

6

"to sue any of the Appellees other than Penn." *Berger*, 843 F.3d at 289. On appeal, the Seventh Circuit did not address any sort of a factual challenge to standing. In fact, on appeal there was really not much of an issue about the other schools and the NCAA at all. Rather, the court adopted the district court's conclusion that "the only fair reading of the Amended Complaint is that [Appellants] are alleging that they are employees of only Penn, not of the other Defendants." *Id.* (citation omitted). In other words, in *Berger*, *the plaintiffs did not even contend that the other defendants were their joint employer*. As a result, the court concluded not that plaintiffs had failed *factually* to establish standing but rather that they "ha[d] not plausibly alleged" traceability or redressability. *Id.*

Nothing in *Berger* suggests that the Seventh Circuit transformed the question of whether a particular defendant is the plaintiff's employer to an issue of standing as opposed to a merits issue. And in this case, unlike in *Berger*, the plaintiffs *do* allege that Meijer was their joint employer, and they include in their complaint a number of allegations specifically directed to this issue. For these reasons, *Berger* does not control the outcome in this case as Meijer contends. Here, Meijer's challenge is not actually an attack on standing; it's an attack on the merits of the plaintiffs' position. As such, what Meijer is seeking is in effect an early grant of summary judgment, before discovery. That's not appropriate—at least without first converting Meijer's motion to a summary judgment motion under Rule 12(d) and giving plaintiffs "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Court declines to do that at this early stage of the case.

When a party makes a Rule 12(b)(1) motion that amounts to an "indirect attack on the merits of the plaintiff's claim," a court may convert it to a Rule 12(b)(6) motion

and "treat it substantively as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Brand v. Toennies*, No. 23-1723, 2024 WL 175948 at *1 (7th Cir. Jan. 17, 2024); *cf. Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) ("[I]t is the substance of a motion that counts, not its label."). That is the course the Court will take here—and in fact, Meijer has argued for dismissal alternatively under Rule 12(b)(6).

For these reasons, the Court denies Meijer's Rule 12(b)(1) motion.

**2.    Personal jurisdiction**

Meijer next moves to dismiss under Rule 12(b)(2), contending that the Court lacks personal jurisdiction over Meijer. Personal jurisdiction can be either general or specific. General jurisdiction, as a general rule, exists in a business's place of incorporation or principal place of business; the principal place of business is most often the place where the corporation's headquarters is located. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (finding that the principal place of business, also referred to as a corporation's "nerve center," is "usually its main headquarters"). Specific personal jurisdiction exists in a particular forum state if a corporation has purposefully directed its activities at the state or purposefully availed itself of the privilege of conducting business there, and the alleged injury arises out of the defendant's forum-related activities. *See, e.g.*, *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398 (7th Cir. 2020). The exercise of jurisdiction must also comport with "traditional notions of fair play and substantial justice." *Id.*

Meijer asks the Court—twice—for dismissal "with prejudice" based on lack of personal jurisdiction. *See* Def. Meijer, Inc.'s Mem. in Supp. of Mot. to Dismiss at 12;

8

Def. Meijer, Inc.'s Reply Mem. in Supp. of Mot. to Dismiss at 8.  That's a non-starter; a

jurisdictional dismissal would be without prejudice.  *See, e.g., Lauderdale-El v. Ind.*

*Parole Bd.*, 35 F.4th 572, 276–77 (7th Cir. 2022).  In other words, if there is no personal

jurisdiction over Meijer in Illinois, plaintiffs could pursue their claims against Meijer

elsewhere—for example, in Michigan, where Meijer has its principal place of business.

Def. Meijer, Inc.'s Reply Mem. in Supp. of Mot. to Dismiss at 7; *see also* Decl. of Joshua

Hahn ¶ 2 (stating that "Michigan was the nerve center for Meijer").

Meijer disputes personal jurisdiction, relying on the same evidence it cited to

support its claimed challenge to standing—in other words, evidence that it contends

establishes it was not the plaintiffs' joint employer.  But the allegations in the third

amended complaint are sufficient to establish a *prima facie* case of jurisdiction, even if

the merits of plaintiffs' joint-employer contention are hotly disputed.  This is so for the

reasons discussed in the next section of this opinion, which addresses the facial

sufficiency of plaintiffs' allegations.  To pierce beyond those allegations, the Court would

have to conduct a hearing on their merits, which in this case (as indicated) would

overlap with the ultimate merits of plaintiffs' claims against Meijer.  The Court is not

averse to doing that, but it would be inappropriate to do so on the present record without

allowing plaintiffs to conduct jurisdictional discovery—which would overlap with merits

discovery.  Jurisdictional discovery

> is proper if a plaintiff establishes a colorable or prima facie showing of
> personal jurisdiction.  To decide whether a plaintiff has satisfied that minimal
> burden, this court considers the record in its entirety and draw[s] all
> inferences in [the plaintiff's] favor, while bearing in mind the fact that,
> without discovery, it is not surprising that the plaintiff can do little more
> than suggest that a defendant currently has minimum contacts.

*B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 864 (7th Cir. 2024) (cleaned

up).  Plaintiffs have cleared that threshold in this case.  The Court therefore denies the motion to dismiss for lack of personal jurisdiction without prejudice to renewal following a reasonable period for discovery.

### 3.     Failure to state a claim

#### a.     Rule 12(b)(6)

Meijer also contends that plaintiffs have not alleged facts sufficient to plausibly show they are entitled to relief.  Specifically, Meijer asserts that plaintiffs have not adequately alleged Meijer is a joint employer and therefore do not meet the statutory requirements for liability under the FLSA and the referenced state wage statutes.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiffs' complaint must contain sufficient factual allegations that state a plausible claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when the facts as alleged lead the Court to a reasonable inference that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court takes all well-pleaded facts as true and draws all reasonable inferences in the light most favorable to the plaintiff.  *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024). The plaintiffs need only allege enough facts to "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  In addition to the pleadings, a plaintiff opposing a Rule 12(b)(6) motion "may submit materials outside the pleadings to illustrate the facts [it] expects to be able to prove."  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

The FLSA provides an expansive definition of who qualifies as an employer: "'Employer' includes any person acting directly or indirectly in the interest of an

employer in relation to an employee." 29 U.S.C. § 203(d); *see also Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992) ("The Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA."). The state wage laws at issue similarly define "employer" broadly. *See, e.g.*, 820 Ill. Comp. Stat. 105/3 § 3(c) (defining employer as "any individual, partnership, association, corporation . . . acting directly or indirectly in the interest of an employer in relation to an employee"); Minn. Stat. § 177.23.6 (defining employer as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee"); Wis. Stat. § 109.01(2) (defining employer as "any person engaged in any activity, enterprise or business employing one or more persons within the state, including the state and its political subdivisions and charitable, nonprofit or tax-exempt organizations and institutions").

Under these definitions, an entity that exercises only indirect control over an employee may still be an employer. The key issue involves the degree of control, and the resolution of that issue is necessarily a "determination [that] will vary depending on the specific facts of each case." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). An entity other than the actual employer may be a joint employer "only if it exerted significant control over the employee." *Whitaker v. Milwaukee County*, 772 F.3d 802, 810 (7th Cir. 2014). A joint employer analysis is grounded in the economic realities of the working relationship; the relevant factors include "(1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance

of work assignments; and (5) issuance of operating instructions."  *Id.*  This list is not exhaustive; other relevant factors include control of the employee's work schedule and determination of the rate and method of payment.  *See Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1128 (N.D. Ill. 2017).

Mapping plaintiffs' complaint onto the factors listed above, the Court finds that they have alleged facts sufficient to enable a plausible inference that Meijer is their joint employer.  For instance, plaintiffs contend that Meijer supervised their daily work performance and promulgated conditions of employment "by reviewing and monitoring [CCAs'] calls with Meijer customers and establishing quality assurance standards that [they] need to follow."  Decl. of Michelle Brandt ¶ 4(f); *see also* Decl. of Kate Egan ¶ 6 ("[W]e took instruction directly from Meijer's employees on how to handle calls. . . . Meijer maintained strict call quality protocols that dictated our job duties.").  Plaintiffs also assert that they "had to seek permission directly from Meijer's quality control team before performing certain tasks" like approving large refund requests.  Decl. of Kate Egan ¶ 5.  Meijer, according to plaintiffs, also monitored their e-mail accounts and provided "scripted emails" to use when assisting Meijer customers.  *Id.* ¶ 8.  The complaint further contends that Meijer "provides the platform for call distribution, call center reporting, and management of queues for the performance of the CCAs' work."  Third Am. Compl. ¶ 157.  These factual contentions, taken together, plausibly support the claim that Meijer is a joint employer of plaintiffs.

Meijer also promulgates "Attendance & Scheduling Guidelines" to which CCAs must adhere.  *See* Pls.' Opp'n to Meijer, Inc.'s Mot. to Dismiss, Ex. 3.  These guidelines state that "[a]ll timecards are reviewed by Meijer management prior to final approval."

*Id.* at 1.  They also set forth an attendance policy that outlines a disciplinary structure for absenteeism.  Under this attendance policy, Meijer has the right to remove CCAs from the Meijer account.  The policy further prescribes the timing of when CCAs may take breaks and the length of those breaks, including the quantity and duration of breaks per shift.  Should a CCA wish to take a leave of absence, the request is subject to approval by Meijer.  These guidelines also require CCAs on the Meijer account to take a "knowledge test" on the first of every month; "[a]gents are required to take the test by the end of each month."  *Id.* at 5.  In addition to knowledge tests, the guidelines also dictate the requirements for attending trainings and meetings: "Trainings and meetings are considered scheduled shifts, and the attendance policy applies.  If a meeting or training ends early, agents must complete the scheduled shift time taking calls."  *Id.* at 8. Collectively, these guidelines plausibly support a claim that Meijer is a joint employer with significant control over plaintiffs' day-to-day activities, including promulgating rules and conditions for their employment and controlling their work schedule.

There are, to be sure, factors that tend to cut against a finding of joint employer status.  Plaintiffs provide only conclusory statements regarding Meijer's control over their rate and method of payment.  There are also limited factual allegations specifying the level of control Meijer has over hiring and firing.  In a declaration, however, plaintiff Brandt claims that Meijer assigned a "red flag" designation to several of the calls it monitored and that as a result, "Meijer instructed AWC to terminate me."  Decl. of Michelle Brandt ¶ 5(b).  This contention provides a basis for a plausible inference that Meijer has significant control over disciplining and terminating employees assigned to its account.

Though plaintiffs' factual allegations are far from determinative on the merits, all that is required at this stage is to nudge their contentions over the plausibility line. Plaintiffs have met this burden. Accordingly, the Court denies Meijer's motion to dismiss their claims under Rule 12(b)(6).

### b. Relation back under Rule 15(c)

Meijer further contends that plaintiffs' claims against them should be dismissed because they are time-barred under the FLSA's statute of limitations. Meijer argues that the FLSA has a two-year statute of limitations and Meijer was not added as a defendant until after that period had lapsed. Meijer also argues that, because they were *added* to the suit, and not *substituted* for an incorrect party, relation back under Federal Rule of Civil Procedure 15(c) does not apply.

Generally, affirmative defenses—like the statute of limitations—are not grounds for dismissal under Rule 12(b)(6), as a plaintiff does not have to anticipate and thus "try to plead around" affirmative defenses. *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) (citing *Gomez v. Toledo*, 446 U.S. 635, 640–41 (1980)). There is an exception, however, where the complaint itself sets forth everything necessary to establish the affirmative defense while also foreclosing any "chance of saving [the] complaint" by the plaintiff, "such as when a complaint reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Rule 15(c) addresses when an amended pleading relates back to the date of the original pleading. The relevant portion of Rule 15(c) permits relation back when

the amendment changes the party or the naming of the party against whom

14

a claim is asserted, if Rule 15(c)(1)(B)[1] is satisfied and if, within the period provided by Rule 4(m)[2] for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

In determining whether Rule 15(c)(1)(C)(ii) is satisfied, the relevant inquiry is "what the prospective defendant knew or should have known during the Rule 4(m) period." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010). Information known to the plaintiff is relevant to the inquiry only "if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* Further, "Rule 15(c)(1)(C) speaks generally of an amendment to a pleading that changes the party against whom a claim is asserted, and it therefore is not limited to the circumstances of a plaintiff filing an amended complaint seeking to bring in a new defendant." *Id.* at 548 n.3. Under this logic, then, Rule 15 allows an amended complaint not only to substitute a correct party for an incorrect one but also to add an additional party. *See Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555,

---

[1] Rule 15(c)(1)(B) permits relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).
[2] Rule 4(m) states in part:

Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service by made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

559–60 (7th Cir. 2011) (finding that, post-*Krupski*, relation back is permitted against a new defendant if, in part, "the plaintiff, had it not been for a mistake, would have sued him instead *or in addition to* suing the named defendant") (emphasis added); *see also Burke v. Chicago Sch. Reform Bd. of Trs.*, 149 F. Supp. 2d 384, 389 (N.D. Ill. 2001) (finding that Rule 15 "expressly contemplates the prospect of the retrospective application of an amended complaint to a defendant who was not named originally but who was added only later," which includes "a defendant who was not named at all to begin with").

The Court declines to dismiss plaintiffs' claims against Meijer on this basis at this time. Dismissal is inappropriate before any significant discovery relating to Meijer is conducted. If discovery were to reveal that Meijer knew or should have known about the lawsuit within the Rule 4(m) period after the suit's initial filing, and the other conditions of Rule 15(c) are met, then the complaint will relate back, and the statute of limitations will not be an issue. This argument is better addressed at a later point during the litigation.

In sum, the Court denies Meijer's motion to dismiss in its entirety.

## B.    Plaintiffs' motion to dismiss A.W.'s counterclaim

Turning to the plaintiffs' motion to dismiss A.W.'s counterclaim, plaintiffs argue dismissal is proper under Rule 12(b)(6) and the Illinois Citizen Participation Act, 735 Ill. Comp. Stat. § 110/15. Plaintiffs seek dismissal under Rule 12(b)(6) on the basis that A.W. is seeking to impermissibly shift to plaintiffs its own duty under the FLSA and state wage statutes to record hours and ensure employees are paid properly for their time. Applying the standard for deciding a Rule 12(b)(6) motion articulated above, the Court

16

concludes that A.W. has failed to state a plausible claim for relief against plaintiffs.

### 1.     Failure to state a claim

The Supreme Court has held that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purpose of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).  As relevant here, the FLSA states: "Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ."  29 U.S.C. § 211(c).  The Court has also concluded that the FLSA creates a non-delegable duty on the part of employers "to keep proper records of wages, hours and other conditions and practices of employment," because they are "in position to know and to produce the most probative facts concerning the nature and amount of work performed."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

A.W. contends that its employee handbook, which all plaintiffs have allegedly agreed to adhere to as a condition of employment, operates as a contract and that any deviation from the handbook's terms therefore constitutes a breach of contract.  In particular, A.W. says that the employee handbook requires all employees to accurately report their hours.  Because plaintiffs' allegations include claims that they were required to work off-the-clock, A.W. claims that plaintiffs breached the handbook by failing to accurately report work they had performed.

A similar fact pattern from a Fourth Circuit case provides helpful guidance here,

despite A.W.'s contention that it is inapposite.[3]  In *Lyle v. Food Lion, Inc.*, 954 F.2d 984 (4th Cir. 1992), two Food Lion employees sought recovery under the FLSA for uncompensated overtime hours.  Plaintiffs alleged that Food Lion's scheduling system assigned specific duties that plaintiffs needed to complete in their authorized hours.  Both plaintiffs, however, found the designated duties could not be completed in the authorized time and thus opted to work off-the-clock to avoid disciplinary action.  There, as here, Food Lion had a policy "prohibiting hourly employees from working 'off the clock,'" and there, as here, deviation from this policy was grounds for termination.  *Id.* at 986.  Food Lion brought a counterclaim against the plaintiffs, alleging in part that they had breached their contracts to the company by violating the policy against off-the-clock work.  *Id.*

The Fourth Circuit affirmed dismissal of the counterclaims, finding that Food Lion was impermissibly seeking "to indemnify itself against [plaintiffs] for its own violation of the FLSA, which . . . is something the FLSA simply will not allow."  *Id.*  The court supported this decision by drawing on jurisprudence from the Fifth Circuit, which similarly noted that "'[t]o engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution' and 'would

---

[3] *Felker v. Southwestern Emergency Medical Services, Inc.*, 521 F. Supp. 2d 857 (S.D. Ind. 2007), which A.W. cites, allowed a breach of contract counterclaim to proceed in an FLSA dispute, but under entirely different circumstances.  In *Felker*, the defendant brought a breach of contract claim to recover the cost for a mandatory certification class that it had paid on behalf of plaintiffs but that they failed to complete.  *Ahle v. Veracity Research Co.*, 641 F. Supp. 2d 857 (D. Minn. 2009), also cited by A.W., addressed whether the court had supplemental jurisdiction over a breach of contract claim arising out of an FLSA dispute regarding unpaid overtime wages.  In *Ahle*, defendants brought the counterclaim on a theory that plaintiffs had falsified their time to get additional wages to which they were not entitled, not that plaintiffs breached a duty by underreporting hours.

undermine employers' incentives to abide by the Act.'" *Id.* (quoting *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986)); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (finding that the text of the FLSA contains "no right of contribution or indemnification for employers found liable under the FLSA" and to permit any such contribution or indemnification would undermine the purpose of the statute).

A.W. contends that it is not seeking indemnification, but rather lost profits due to its inability to invoice third parties for the CCAs' claimed off-the-clock work.  In other words, according to A.W., it is not seeking "the exact same damages plaintiffs would receive if successful on the FLSA claim," and accordingly cases like *Lyle* are inapplicable.  Def. A.W.'s Opp'n to Pls.' Mot. to Dismiss Countercl. at 12.  This is a distinction without a difference.  Under A.W.'s theory, even if it would not be "indemnify[ing] itself" for its statutory violation, it would be *profiting* from the violation. This is not a viable way around the reasoning in *Lyle*.

A.W. has not stated a plausible claim.[4]  A.W.'s counterclaim is premised on the contention that plaintiffs' breached a contractual duty to accurately report their hours. Though A.W. may have a policy requiring employees to record all the time they work, it is ultimately A.W.'s statutory duty as employer to ensure that those records are accurate.  *See Anderson*, 328 U.S. at 687.  Attempting to shift that responsibility to plaintiffs seeking recovery of unpaid overtime wages, and in turn seeking to recover the

---

[4]  The Court also notes that plaintiffs' FLSA and other claims are premised at least partly on a contention that A.W.'s policies *precluded* them from recording pre-shift time.  *See* Third Am. Compl. ¶¶ 123, 125.  If plaintiffs end up proving their claims, including this predicate, allowing A.W.'s counterclaim would effectively allow it to profit from what amounts to a direction to employees to violate the law.

very wages sought by those plaintiffs, contradicts the underlying purpose of the FLSA. *See, e.g., Herman*, 172 F.3d at 144 ("[T]he [FLSA] was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted."). Accordingly, the Court grants plaintiffs' motion to dismiss A.W.'s counterclaim under Rule 12(b)(6).

### 2. Illinois Citizen Participation Act

Plaintiffs also seek dismissal of the counterclaim pursuant to the ICPA, also known as the Illinois Anti-SLAPP[5] statute. Given its determination that A.W. has failed to state a claim against plaintiffs for breach of contract, the Court need not address the issues relating to this contention.

### Conclusion

For the reasons stated above, the Court denies defendant Meijer's motion to dismiss plaintiff's third amended complaint [dkt. no. 87] and grants plaintiffs' motion to dismiss defendant A.W. Companies' counterclaim [dkt. no. 97]. At the telephonic status hearing on October 4, 2024, the parties should be prepared to discuss any appropriate modifications to the discovery and pretrial schedule as well as plaintiffs' motion for leave to file a fourth amended complaint.

Date: October 3, 2024

_____
MATTHEW F. KENNELLY
United States District Judge

---

[5] SLAPP is an acronym for "strategic lawsuit against public participation."