**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KATE EGAN, KENNETH BERRY, MICHELLE BRANDT, NICOLE GONZALEZ, and AMBER LYNE** individually, and on behalf of others similarly situated, | Case No.: 23-cv-1148 |
| | Hon.: Matthew F. Kennelly |
| Plaintiff, | Hon.: Susan E. Cox |
| vs. | |
| **A.W. COMPANIES, INC.**, a Minnesota Corporation, and **MEIJER, INC.**, a Michigan Corporation, | |
| Defendants. | |

---

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FLSA COLLECTIVE SETTLEMENT APPROVAL**

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................1

II.  Procedural History .....................................................................................................2

III. Facts Relevant to Settlement Approval ....................................................................5

IV.  Key Terms of the Agreement .....................................................................................6

V.   Standard of Review ....................................................................................................7

VI.  Argument .....................................................................................................................9

A.  Final Certification of Settlement Collective Should be Granted ............................9

B.  A Bona Fide Disputed Existed Between the Parties ..............................................10

C.  The Settlement Provides a Reasonable Resolution of
    of the Dispute ........................................................................................................11

D.  The Service Awards in the Agreement are Reasonable and Warrant Approval ....13

E.  The Attorney Fees and Litigation Costs are Reasonable and Warrant Approval ...15

i.  The Litigation Costs are Reasonable ................................................................15

ii. The Hours Expended Were Reasonable, Necessary, and are Continuing .........16

iii. The Hourly Rates Sought by Plaintiffs' Counsel is Reasonable ....................18

VII. Conclusion .................................................................................................................19

Certificate of Service ...........................................................................................................20

i

## TABLE OF CASES

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)……...………8,9

*Mollett v. Kohl's Corp.*, No. 21-CV-707-PP, 2022 WL 4641082, at *2 (E.D. Wis. Sept. 30, 2022)…………………………………………………………………………………………... 7-8

*Cf. Farber v. Riesererblend, Inc.*, No. 1:22-CV-17-HAB, 2022 WL 17741830, at *1 (N.D. Ind. Dec. 5, 2022)………………..……………………………………................................................. 8

*Unifirst Corp. v. Rapshus*, No. 23-CV-97-JPS, 2023 WL 4615061, at *1 (E.D. Wis. May 15, 2023) …………………………………………………………………………………………… 8

*Neill v. Midwest Tankermen, Inc.*, No. 1:18-CV-07382, 2019 WL 2213858, at *1 (N.D. Ill. May 10, 2019))...........................................................................................................................................8

*Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-CV-01937, 2022 WL 16706898, at *1 (N.D. Ill. Nov. 4, 2022)…………...................................................................................................... 8,9

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989),) ......................................8

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)............................................ 8

*Ceniceros v. Pactiv, LLC*, No. 18-CV-1759, 2019 WL 13252838, at *1 (N.D. Ill. Jan. 17, 2019)………………………………………………………………………………..8

*Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010)………………8,9

*Butler v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011)……………………………………………………………………………………8-9

*Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014)……………………………………………………………………..…………………..9

*Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)…………………………………………….9

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)………………………………………………..9

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980)……………………………9

*Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd*, 525 U.S. 315 (1999)……………9

*Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956 (N.D. Ill. June 12, 2018)………………………………………………………………………....…..15

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)……………………………...…...……...13

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7
(S.D.N.Y. June 25, 2007)……………………………………………………...…...………..13,14

*Briggs v. PNC Fin. Servs. Grp., Inc.*,………........................................................ 13-14,15

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015 )…………………15

*Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995,
at *3 (N.D. Ill. May 1, 2017)……………………………………………………….…………15

*Binissia v. ABM Indus., Inc.*, No. 13 CV 1230, 2017 WL 4180289, at *3
(N.D. Ill. Sept. 21, 2017)…………………………….…………………………….…………16

*Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009)…..….……16

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)……………………………………………..16

*Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000)……………….……………………16, 17-18

*Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F. Supp. 3d 723, 741 (N.D. Ill. 2015),
*amended*, No. 12 C 9985, 2015 WL 3962573 (N.D. Ill. June 25,
2015)…………………………………………………………………..…………17

*Gibson v. City of Chi.*, 873 F.Supp.2d 975, 989 (N.D. Ill.2012)………...…………………….17

*Tchemkou v. Mukasey*, 517 F.3d 506, 511–12 (7th Cir.2008)………………...…………….17

*Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *5
(N.D. Ill. Apr. 16, 2018)……………………………………………...……………18

*Bainter v. Akram Invs., LLC*, No. 17 C 7064, 2018 WL 4943884, at *5
(N.D. Ill. Oct. 9, 2018)………………………………………………….…………18

*Kurgan v. Chiro One Wellness Centers LLC*, No. 10-CV-1899, 2015 WL 1850599,
at *4 (N.D. Ill. Apr. 21, 2015)…………………………………….…………………18

*Williams v. Neil's Food, Inc.*, No. 13–cv–2108, ECF No. 25 (N.D.Ill.Dec. 19, 2013)………….18

*Martinez v. Flood Control, Inc.*, No. 11–cv–8841, ECF No. 24 (N.D.Ill. July 16, 2012)……….18

*McCune v. Faneuil Inc.*, No. 4:23-CV-41, 2024 WL 3811411, at *7
(E.D. Va. Aug. 13, 2024)……………………………………………………...…………18

Plaintiffs, Kate Egan, Kenneth Berry, Michelle Brandt, Nicole Gonzalez, and Amber Lyne (collectively as "Plaintiffs"), without opposition from Defendants A.W. Companies, Inc. ("AWC") and Meijer, Inc. ("Meijer") (together with AWC as "Defendants"), respectfully requests that the Court grant approval of their proposed FLSA collective settlement agreement (the "Agreement"), which is attached hereto as *Exhibit 1*.

## I. INTRODUCTION

Plaintiff Kate Egan ("Egan") initially filed this lawsuit for unpaid wages under state and federal wage laws on January 5, 2023. ECF No. 1. In her Complaint, Egan sought unpaid wages on behalf of herself and her similarly situated coworkers for the time they spent booting up and shutting down their computer systems each day. The Complaint alleged no less than nineteen (19) minutes of unpaid wages related to pre-, mid-, and post-shift computer boot-up and shutdown activities. *Id*. at ¶ 53. A cursory review of the docket entries demonstrates that Defendants strongly disputed Plaintiffs' allegations of off-the-clock work from the onset of this case[1].

Nonetheless, despite the diametrical views on the merits of the claims asserted in the lawsuit, Plaintiffs and Defendants (the "Parties") were able to reach a settlement agreement that provides substantial relief to the 278 member collective that was conditionally certified by the Court on June 29, 2023. The conditionally certified collective is defined as follows:

> All current and former remote hourly-paid Customer Service Representatives ("CSRs") and Team Leads (collectively "Contact Center Agents" or "CCAs") who work or have worked for A.W. Companies, Inc. at any time from June 27, 2020 to June 29, 2023.

*See* ECF No. 33, Conditional Certification Order.

The proposed settlement provides the 278 individuals that opted-in to this lawsuit ("Settlement Collective") with $50,000.00 to compensate them for the time spent loading and

---

[1] A detailed history of the dispute is provided in the Declaration of Charles Ash, which is attached as *Exhibit 2*.

1

logging into their computer systems.

In addition to the wages paid to the Settlemetn Collective for their computer bootup and shutdown time, the Parties' Agreement provides for $123,000.00 to be paid as reasonable attorney fees and litigation costs. As stated in the Agreement, the amount for attorney fees and costs was separately negotiated and was agreed upon after determining the settlement sums for the Settlement Collective. *Exh. 1* at ¶3(a).

Finally, the Parties' Agreement provides for representative awards of $5,000.00 to named Plaintiff Egan and $3,000.00 each to the subsequently added named Plaintiffs (Berry, Brandt, Gonzalez, and Lyne) for their assistance and effort in obtaining the proposed settlement Agreement. *Exh. 1* at ¶3(c).

For all the reasons set forth herein, Plaintiffs respectfully submit that the Parties proposed Agreement is fair, reasonable, and adequate in all aspects, and therefore should be approved in its entirety.

## II.    PROCEDURAL HISTORY

As stated above, this case has been heavily litigated for more than two years. ECF No. 1. Out of the gate, Plaintiffs' Complaint was met with a Rule 12 Motion to Dismiss that required Plaintiffs to file a First Amended Complaint ("FAC").[2] ECF Nos. 11, 18.

To protect the FLSA statute of limitations for the putative collective, and the day after the FAC was filed, Plaintiff filed a Pre-Discovery Motion for Conditional Collective Certification and Court-Authorized Notice ("Conditional Certification Motion"). ECF No. 19. The Conditional Certification Motion was fully briefed by the Parties and ultimately granted on June 29, 2023. ECF No. 33. Plaintiffs' Counsel selected ILYM, Inc. ("ILYM") to serve as the notice administrator, and

---

[2] Plaintiffs recognize the Court is familiar with this case and appreciates succinct motion practice, so only an abbreviated case history is being provided for this protracted litigation.

shortly thereafter, ILYM distributed notice to the 1,328 members of the conditionally certified collective. *Exhibit 2*, Ash Decl. at ¶¶ 13-16. Of the 1,328 individuals that received notice of this case, 278 returned the consent to join forms (approximately 20% that received notice), which Plaintiffs' Counsel promptly filed with the Court. *See* ECF Nos. 37, 39-46, 51.

On October 18, 2023, the Parties filed a Rule 26(f) Report that outlined two competing discovery plans. ECF No. 49. At the subsequent status conference, the Court ordered the Parties to continue to confer regarding a discovery plan and to resubmit a Rule 26(f) report. On November 7, 2023, the Parties submitted another Rule 26(f) report that resolved some of the disagreements. ECF No. 55. The Court set the matter for another hearing on November 28, 2023. ECF No. 56.

On November 9, 2023, Plaintiffs filed a Second Amended Complaint ("SAC"), which added additional state law wage claims on a Rule 23 basis. ECF No. 57.

Unable to reach an agreement on a proposed discovery plan, the Parties submitted a joint letter outlining their ongoing disputes on November 22, 2023. At the heart of the dispute was AWC's use of what it referred to as a "Questionnaire" to opt-ins, but what Plaintiffs viewed as cumbersome, unnecessary and individualized interrogatories to opt-ins. ECF No. 59. Once again, the Court provided the Parties with some guidance, but ordered them to continue conferring regarding their disputes and submit another status report. ECF No. 61. Ultimately, on December 6, 2023, the Court decided the remaining disputes and issued a scheduling order. ECF Nos. 63, 64.

Shortly thereafter, the parties commenced discovery. ECF No. 69. In the months that followed, several discovery disputes arose, and which are detailed in the Parties' status reports. *See e.g.* ECF No. 72. As is often the case in class and collective cases, discovery was a massive undertaking for both sides. In fact, over the course of conducting written discovery, more than 317,000 pages of documents were produced by AWC. *Exh. 2*, Ash Decl. at ¶¶ 24-25.

In Plaintiffs' view, the documents produced by AWC during discovery established that Defendant Meijer was a joint employer and properly named as a defendant in this lawsuit. This remains a contested issue, as Defendants do not believe Meijer is a joint employer. Nonetheless, rather than forcing Plaintiff to file a separate lawsuit, the Court permitted Plaintiffs to file a Third Amended Complaint ("TAC") that added Meijer as a Defendant. The Third Amended Complaint was filed on May 17, 2024, and is presently the operative complaint in this lawsuit. ECF No. 76.

In response to the TAC, AWC filed an Answer and Counterclaim against Plaintiffs. ECF No. 80. In short, AWC's counterclaim sought to recover any unpaid wages from Plaintiffs because its employee handbook contained language that prohibited off-the-clock work. AWC likened the language in the handbook to a breach of contract claim against Plaintiffs. *Id*. Upon service of the counterclaim, Plaintiffs' Counsel immediately began preparation of a Rule 12 Motion to Dismiss, which was fully briefed by the Parties and ultimately granted. ECF Nos. 97, 108, 115, 120.

The Counterclaim also prompted Plaintiffs to file a Motion for Leave to File a Fourth Amended Complaint that added a retaliation claim against Defendant for filing what Plaintiffs believed to be a frivolous counterclaim for indemnification. That motion was fully briefed and is currently under advisement. ECF Nos. 101, 123, 125.

Meanwhile, Meijer filed its own motion to dismiss the TAC, which was fully briefed and ultimately denied. ECF Nos. 86, 110, 112, 120.

During this time, Plaintiffs also filed a Motion to Compel against AWC based on alleged failures to produce documents during written discovery. ECF No. 99-100. After the Motion to Compel was filed, AWC agreed to produce the 64,000 emails sought through the motion. Accordingly, the motion was denied as moot. ECF Nos. 105-06. AWC ultimately produced approximately 317,000 pages of documents. *Exh. 2*, Ash Decl. at ¶ 25.

In the months that followed, discovery continued. At the same time, discussions of resolution began to advance. On December 6, 2024, after extensive negotiations that spanned several days, the Parties reported to the Court that they had reached a settlement in principle and had begun reducing the details of the settlement to writing. ECF Nos. 126-27.

Leading up to the December holidays, the Parties jointly prepared and executed a term sheet which established several of the key terms of the settlement (including the monetary terms). In the first weeks of the new year, the Parties finalized the terms of the Agreement that is now before the Court for approval. *See Exhibit 1*, the Agreement.

## III.    FACTS RELEVANT TO SETTLEMENT APPROVAL

Plaintiffs allege that they were not compensated for the time spent booting up and shutting down their computers while employed as customer service/call center representatives for Defendants. *See generally* ECF No. 76, the TAC. Defendant, A.W. Companies, is a Minnesota corporation that contracts with third-parties to provide outsourced call center services for its clients. *See id.* at ¶¶ 2-7. One such client is Defendant Meijer, Inc., a Michigan corporation. The Settlement Collective members were all staffed on the Meijer account. According to Defendant Meijer, it is AW that hired, paid and supervised Plaintiffs. Meijer asserts that it simply contracted with AW for call center services and that Meijer did not employ or otherwise have an agreement to pay wages to any member of the Settlement Collective. ECF No. 88, p. 2.

Conversely, Plaintiffs allege that Defendants were joint employers and that they systematically required them to perform the computer bootup and shutdown process off-the-clock, and that the computer bootup and shutdown processes were integral and indispensable to their job duties. See generally ECF No. 76, Third Amended Complaint. Defendants deny any wage violations and strenuously assert that Plaintiffs' claims fail for two primary reasons. First, all employees have complete freedom in deciding how to keep their time because they are required to "write in" their

time on their own timecards. ECF No. 27, p. 2. According to AW, because there is no automated time entry system that determines clock in and clock out times, an employee that must be ready to field calls at 7AM, but starts booting up systems at 6:55AM, can just simply write in 6:55AM on that day's timecard. *Id.* Second, according to AW its employees are not considered tardy for their shifts unless they are not "available" to take inquiries for over ten minutes after their scheduled shift start. *Id*, p. 6. Additionally, AW has repeatedly cited to language in its employee handbook that prohibits employees from working off-the-clock. *See e.g.*, ECF No. 80, 108. According to Defendants, the combination of the "grace" period, the prohibition on off-the-clock work in the handbook, and the self-recording time system belies any argument that off-the-clock work occurred or that Defendant had knowledge of the off-the-clock work that occurred.

Plaintiffs take issue with all of these defenses, but the defenses nonetheless weighed on their decision to settle the case. Notwithstanding the parties' opposing views on the merits of Plaintiffs' claims, the Parties agreed to explore resolution on behalf of the Settlement Collective (the 278 individuals that joined the lawsuit following notice). Based on the data payroll and time entry data produced by AW, Plaintiffs' Counsel ascertained the following key metrics: (1) the Settlement Collective worked 7,240 total work weeks; and (2) the average hourly rate of members of the Settlement Collective was $12.00.

## IV.    KEY TERMS OF THE AGREEMENT

Under the Parties' Agreement, AW will pay a total of $190,000.00.[3] *Exh. 1* at ¶ 3. This includes a $50,000.00 fund to compensate the 278 members of the Settlement Collective for their computer bootup/shutdown claims. *Id*. ¶ 3 (c). Each Opt-in Plaintiff, in exchange for the Individual Settlement Award they will receive, will provide Defendants with a limited release of wage and

---

[3] AW has promised to make the payments under the Parties' Agreement. However, should AW fail to make any payments as promised, the Parties' Agreement provides that Meijer will be responsible for making payments. *See* Exh. 1 at ¶ 12.

hour claims only. *Id*. ¶ 8.

In recognition of their efforts in litigation and contributions to obtaining the Settlement Agreement, AW will pay Plaintiff Egan a $5,000.00 service award and the subsequent Named Plaintiffs (Berry, Brandt, Gonzalez, and Lyne) service awards in the amount of $3,000.00 each (totaling $17,000.00). *Id*. ¶ 3 (b). In exchange for the payment of the service awards, the Named Plaintiffs will provide Defendants with a general release. *Id*. ¶ 8.

Additionally, under the Parties' Agreement, AWC will pay Plaintiffs' Counsel's attorney fees and costs totaling $123,000.00. *Id*. ¶ 3 (a). Litigation costs in the amount of $12,386.31 shall be paid within twenty-one (21) days of the Court's approval of the Agreement. *Id*. ¶ 5(b). However, in order to secure the Agreement, Plaintiffs' Counsel agreed to accept payment of the $110,563.69 in attorney fees on a payment plan of twelve (12) monthly installments, with the first payment coming due sixty (60) days after the Court's approval of the Agreement. *Id*. ¶ 5(a).

To be clear, Plaintiffs and the Settlement Collective will not need to wait for payment. In fact, AW will issue payments (Individual Settlement Awards) to the Settlement Collective within 28 days of the Court's approval of the Agreement.  *Id*. ¶ 5(c)-(d).

The parties request the Court approve the settlement, then initially dismiss the case without prejudice and allow Plaintiffs to reopen the case in the event of a breach. The dismissal without prejudice will automatically convert to a dismissal with prejudice upon completion of all payments contemplated under the Agreement. *Exh. 1* at ¶ 11.

## V.    STANDARD OF REVIEW

In the present motion, the Parties seek Court approval under the FLSA. "The Seventh Circuit has not addressed the question of whether stipulated agreements under the FLSA require court approval, but district courts in the Seventh Circuit routinely require such approval." *Mollett*

*v. Kohl's Corp.*, No. 21-CV-707-PP, 2022 WL 4641082, at *2 (E.D. Wis. Sept. 30, 2022).[4]

As Judge Kocoras noted, the standard for an opt-in FLSA settlement is less exacting than a traditional Rule 23 class action settlement. This is because, "[c]ollective actions under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), require workers to affirmatively opt-in to the litigation, unlike the opt-out procedure in Rule 23 class actions, and thus do not implicate due process concerns." *Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-CV-01937, 2022 WL 16706898, at *1 (N.D. Ill. Nov. 4, 2022). "Under the FLSA, 'parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date.'" *Id.*, citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). "Thus, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements." *Id.*, *citing Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013). "There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it." *Id.*

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Ceniceros v. Pactiv, LLC*, No. 18-CV-1759, 2019 WL 13252838, at *1 (N.D. Ill. Jan. 17, 2019); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler v. Am. Cable & Telephone, LLC,* No. 09 Civ. 5336, 2011 WL 4729789, at

---

[4] *Cf. Farber v. Riestererblend, Inc.*, No. 1:22-CV-17-HAB, 2022 WL 17741830, at *1 (N.D. Ind. Dec. 5, 2022) ("FLSA collective action settlement agreements require judicial approval."); *Unifirst Corp. v. Rapshus*, No. 23-CV-97-JPS, 2023 WL 4615061, at *1 (E.D. Wis. May 15, 2023) (refusing to approve settlement where there is an "absence of a statutory command or requirement arising from binding case law [that] the Court's approval of the parties' agreement is necessary"); *Neill v. Midwest Tankermen, Inc.*, No. 1:18-CV-07382, 2019 WL 2213858, at *1 (N.D. Ill. May 10, 2019) ("it is not clear that court approval is required for every FLSA settlement [but] because both parties present the motion, the Court will consider it.")

*8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.,* No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). *See also Burkholder* at 995 ("a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel ... and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.") (quotations omitted); *Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-CV-01937, 2022 WL 16706898, at *1 (N.D. Ill. Nov. 4, 2022) ("Courts approve [FLSA] settlements when they are reached as a result of arm's-length negotiations to resolve bona fide disputes.").

"It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick,* 600 F.2d 70, 75 (7th Cir. 1979). *See also*, *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). The rationale for this policy is simple: "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd*, 525 U.S. 315 (1999).

## VI.    ARGUMENT

### A.  Final Certification of Settlement Collective Should be Granted

This Court has already made a preliminary determination that the Settlement Collective is similarly situated. ECF No. 33. For purposes of the Agreement only, Defendants do not object to

final certification of the Settlement Collective.[5] In further support of final certification of the Settlement Collective, Plaintiffs refer the Court to the conditional certification motion which explained that all members of the Settlement Collective had the same or similar job duties, computer systems, timekeeping systems, and were subject to the same or similar employment policies and practices. ECF No. 19. For settlement purposes only, the Court should grant final certification of the Settlement Collective pursuant to 29 U.S.C. § 216(b).

**B. A Bona Fide Dispute Existed Between the Parties**

Under the Parties' Agreement, only the existing opt-ins (and the named Plaintiffs) will provide Defendants with a release. There are no absent class members.

In this case, Defendants continue to deny that any off-the-clock work occurred. To the extent that off-the-clock work did occur loading and logging into computer systems, Defendants maintain that Plaintiffs' time estimations related to that bootup and shutdown time are wildly exaggerated. Furthermore, Defendants argue that any off-the-clock work that did occur was in violation of Defendants' written policies and without Defendants' knowledge. Accordingly, Defendants argue that they cannot be held responsible for off-the-clock that they did not know occurred or could not have reasonably known occurred, particularly because Plaintiffs were responsible for recording their own time and they were afforded a grace period of no less than 10 minutes prior to being marked tardy for the day. Ash Decl. at ¶34.

The above listed defenses are just a few of the defenses raised by Defendants during litigation. Plaintiffs note that AW raised 29 affirmative defenses to the claims asserted in the TAC. ECF No. 80. And Meijer maintains that it did not employ the Settlement Collective, so it faces no

---

[5] If the Parties' proposed Agreement is not approved, Defendant reserves all class and collective certification defenses. Neither the Agreement nor the present motion for approval shall be deemed a waiver of any such defenses.

exposure under state or federal wage laws.

Plaintiffs take issue with the defenses raised by Defendant. However, the existence of these defenses weighed on their decision to settle the case.

## C. The Settlement Provides a Reasonable Resolution of the Dispute

The settlement fund compensates the Settlement Collective for straight time damages and (for those limited individuals that worked 38.5 hours in any given week) for overtime damages as well. However, as explained below, the $50,000.00 fund could also be viewed as a more than 100% recovery of all overtime damages alleged in the TAC. Plaintiffs' review of the payroll records provided by AW establishes that the vast majority of weeks were non-overtime weeks. More precisely, based on Plaintiffs' damage modeling, of the 7,240 total weeks approximately 22% (1,621) were workweeks in which the Settlement Collective worked 38.5 hours or more. Assuming 38.5 hours were worked in a week, the Settlement Collective would need to work a full hour and half off-the-clock (or 18 minutes over 5 shifts) before any overtime laws were triggered. Notably, the TAC alleged "no less than nineteen (19) minutes per day of work performed during pre- and post-shift time and during their lunch periods." *See* TAC at ¶ 100. This means, in a week where 38.5 hours were worked, the Settlement Collective member actually only had 1 minute of lost overtime. In sum, the majority of the Settlement Collective's workweeks were non-overtime weeks.

Based on the payroll data, the average hourly rate for the Settlement Collective was just $12.00 per hour, which breaks down to $0.20 per minute. Accordingly, the average overtime rate was $18 per hour, which breaks down to $0.30 per minute.

Assuming half of the alleged maximum of 19 minutes of unpaid time were payable at the Settlement Collective's overtime rate in weeks that met or exceed 38.5 hours, Defendants'

exposure for overtime damages under the FLSA with a three-year statute of limitations would be approximately $46,198.50 including liquidated damages.[6] Of course, if Plaintiffs are unable to establish that Defendants' violation was willful, then roughly a third of those damages would be eliminated by virtue of a 2-year statute of limitations – plummeting Defendants' maximum overtime exposure to approximately $30,000.00 including liquidation.

Additionally, at five shifts worked per week, Defendants' maximum exposure to the Settlement Collective for straight time damages under Plaintiffs' damage modeling is approximately $122,160.50.[7] Yet, the unsurprising reality is that the Settlement Collective did not always work 5 shifts per week, and, as mentioned above, many members of the Settlement Collective have not asserted claims for straight time wages in the TAC. These realities notwithstanding, the Agreement provides the Settlement Collective with a payment for both overtime and straight time weeks.

Considering most of the damages in this case are attributable to non-overtime weeks, the $50,000.00 settlement fund can be viewed as seven (7) minutes of straight time damages (or $7.00 per week) based on Settlement Collective's total workweeks (7,240 weeks) with Defendants. Alternatively, the $50,000.00 settlement fund could be viewed as more than a full recovery of all FLSA overtime damages alleged in the TAC. From either point of view, the Individual Settlement Awards represent an excellent result in this highly contested case.

---

[6] 0.3 (overtime rate per minute) x 9.5 minutes of unpaid overtime per shift = $2.85 per shift x 5 shifts = $14.25 per week of unpaid overtime x 1,621 overtime weeks = $23,099.25 x 2 (liquidated damages) = $46,198.50 FLSA damages.

[7] 0.2 (regular rate per minute) x 19 minutes of unpaid straight time = $3.80 per shift x 5 shifts = $19.00 per week of unpaid straight time x 5,619 weeks under 38.5 hours = $106,761 unpaid wages in weeks under 38.5 hours. 0.2 (regular rate per minute) x 9.5 minutes of unpaid straight time = $1.90 per shift x 5 shifts = $9.50 per week of unpaid straight time x 1,621 weeks over 38.5 hours = $15,399.50 unpaid wages in weeks over 38.5 hours. $106,761 + $15,399.50 = $122,160.50 maximum straight time exposure.

Indeed, considering the defenses asserted by Defendants, the Agreement provides a significant, meaningful, and immediate recovery to the Settlement Collective. This is because Plaintiffs face the possibility of recovering less or making no recovery at all.

In addition to the uncertainty of the ultimate outcome of the litigation, further litigation of Plaintiffs' claims will cause further delay and additional expenses. Even assuming Plaintiffs succeeded in establishing their claims, Defendants would likely appeal at least one or more issues, which would further delay a recovery. Stated differently, there is value in prompt payment without incurring additional expenses and risk. These facts regarding the uncertainty of recovery and the immediate nature of payment support the reasonableness of the parties' Agreement.

**D. The Service Awards in the Agreement are Reasonable and Warrant Approval**

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See, Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

"Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Briggs* at *2. "In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in

13

pursuing the litigation." *Id.*

First, Named Plaintiffs took substantial actions to protect the interests of the putative Settlement Collective, and those actions resulted in a substantial benefit. Shortly after the lawsuit was filed, Plaintiff Egan provided Plaintiffs' Counsel with the information necessary to obtain conditional certification and signed a declaration supporting the same. This resulted in her coworkers promptly receiving notice of the case and the opportunity to file a consent to join to stop their statute of limitations from running. Even prior to filing the lawsuit, Plaintiff Egan participated in the extensive pre-suit investigation efforts of Plaintiffs' Counsel and participated in countless conference calls. Likewise, after joining the case, the other Named Plaintiffs assigned their name to this lawsuit and promptly asserted state law claims in the SAC and TAC under Fed. R. Civ. P. 23 to toll the statute of limitations for the workers in their respective states. Throughout the litigation, all the Named Plaintiffs made themselves available to Plaintiffs' Counsel and provided significant assistance in the prosecution of this case. Ash Decl. at ¶31, 48.

Second, the Settlement Collective will clearly benefit from the Named Plaintiffs efforts, as each member of the Settlement Collective will receive a substantial payment to account for the off-the-clock work alleged in the FAC.

Third, as explained above, the amount of time and effort expended by the Named Plaintiffs warrants the requested service awards. They all provided regular and substantive information that played a crucial role in the litigation. Additionally, the "reputational risks" Plaintiffs took on when they associated their names with filing a class action are especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as

14

a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015 ) ("Incentive awards are particularly appropriate in wage-and-hour actions where the plaintiffs undertake a significant 'reputational risk' by brining suit against their former employer."). The reputational risk of adverse treatment is not limited to Defendants but also present with future employers. *Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at \*3 (N.D. Ill. May 1, 2017) (Plaintiffs "risked retaliation from future employers for the benefit of all [s]ettlement [c]lass [m]embers.")

Finally, the requested Service Awards are well within the range of services awards approved in similar cases. *Furman* at \*3 (approving $10,000 service award to first named plaintiff in overtime collective action and $5,000 to an opt-in); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at \*3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service awards to named plaintiff in overtime collective action); *Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at \*2 (N.D. Ill. June 12, 2018) (awarding service awards between $3,000 to $7,500).

### E. The Attorneys Fees and Litigation Costs are Reasonable and Warrant Approval

#### i. The Litigation Costs are Reasonable

As stated above and in the Agreement, the "Attorneys' Fee Amount is the total amount of attorneys' fees, costs, and expenses." The major costs and expenses reasonably incurred are itemized in the table below.

| Expense | Amount |
|---|---|
| ESI Vendor Hosting and Consulting Fees | $3,729.25 |
| Transcript Fees, Filing Fees, Service Fees | $788.60 |
| Notice Administration (ILYM Group, Inc) | $7,007.12 |
| Flights (2), Parking and Local Transportation for July 10, 2024 in person hearing | $861.34 |
| TOTAL | $12,386.31 |

15

Each of the above costs were reasonable and necessary for the successful prosecution of this case. Furthermore, these costs reduce the amount that is attributable as "fees" to $110,613.69

### ii. Hours Expended Were Reasonable, Necessary, and are Continuing

"In FLSA actions, the Seventh Circuit has made clear that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"—known as the "lodestar." *Binissia v. ABM Indus., Inc.*, No. 13 CV 1230, 2017 WL 4180289, at *3 (N.D. Ill. Sept. 21, 2017); *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Seventh Circuit has refused to adopt "any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered." *Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000).

In this case, the legal work began over two years ago with the initial interview of Plaintiff Egan and the substantial pre-suit investigation of the case that followed. *Exh. 2*, Ash Decl. at ¶ 10. As explained above, in January 2023, Plaintiff Egan filed a 150 paragraph Complaint that was met with a Rule 12 motion. ECF Nos. 1, 12. This aggressive defense posture continued over the next two years and heavy motion practice and discovery ensued. After conditional certification was granted, Plaintiffs' Counsel coordinated with the notice administrator regarding compliance with the Court's order and prompt distribution of the court-approved notice. After the court-approved notice was distributed, Plaintiffs' Counsel participated in countless interviews with members of the Settlement Collective that decided to participate in the case to answer their questions and to determine which individuals should be offered by Plaintiffs as discovery opt-ins.

To date, Plaintiffs' Counsel has incurred 655.1 hours of attorney time in prosecuting this case. The legal services performed are more fully explained in the attached declarations from

Plaintiffs' Counsel. However, all the time incurred was reasonable and necessary in the successful prosecution of this lawsuit. Furthermore, the work on this matter is far from being done. Plaintiffs' Counsel will continue to accrue attorney fees through the settlement approval and settlement administration process. More specifically, Plaintiffs' Counsel will be called upon to answer questions regarding the settlement, checks lost or sent to the wrong address, and a variety of other time-consuming tasks that arise while carrying out the terms of the Agreement. *See Exhibits 2-4*.

Upon reaching an agreement on the monetary terms of the settlement, the Parties negotiated and prepared a written term sheet outlining many of the key terms of their Agreement. In the weeks that followed, the Parties negotiated the remaining terms of the Agreement and reduced them to writing in the long-form settlement Agreement that is now before the Court for approval. During this process, Plaintiffs' Counsel engaged in extensive dialog (written and verbal) with their clients to explain the details of the settlement. Once the Agreement was finalized and executed by the Parties, Plaintiffs' Counsel turned to drafting the present motion and declarations for settlement approval. Aside from staff assistance, the legal work for the Settlement Collective was performed by attorneys Charles Ash, Oscar Rodriguez and Andrew Frisch. *Exhibits 2-4*.

To that end, "the mere fact that 'two lawyers have billed for the same task does not mean that the hours should be deducted.'" *Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F. Supp. 3d 723, 741 (N.D. Ill. 2015), *amended*, No. 12 C 9985, 2015 WL 3962573 (N.D. Ill. June 25, 2015), *quoting Gibson v. City of Chi.,* 873 F.Supp.2d 975, 989 (N.D. Ill.2012); *see also Tchemkou v. Mukasey,* 517 F.3d 506, 511–12 (7th Cir.2008) ("The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's [sic] trying to wade through the issue alone."). Thus, the relevant inquiry remains whether the time was

"reasonably expended." *Hensley,* 461 U.S. at 444, 103 S. Ct. 1933.

### iii. The Hourly Rate Sought by Plaintiffs' Counsel is Reasonable

The attorneys that represent the Plaintiffs and Settlement Collective are extremely experienced wage and hour litigators. In fact, they practice exclusively in wage and hour class and collective actions throughout the country. *See generally*, *Exh. 2-4*, Plaintiffs' Counsel Declarations. In fact, over the course of his career, Attorney Ash has represented call center workers in more than forty (40) lawsuits under the FLSA. *Exh. 2* at ¶ 8. However, the rates sought in this case are far below the standard billing rates of Plaintiffs' Counsel.[8] Thus, despite the outstanding recovery, Plaintiffs' Counsel will receive a negative multiplier. In fact, based on the current number of hours reasonably spent on this case and the amount of fees provided by the settlement Agreement, the blended hourly rate for attorneys Ash, Rodriguez, and Frish is approximately ***$168.85***. That rate is well within, in fact, far below, the rates approved in other FLSA action in this District. *See Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *5 (N.D. Ill. Apr. 16, 2018) (approving $650 per hour rate in FLSA case); *Bainter v. Akram Invs., LLC,* No. 17 C 7064, 2018 WL 4943884, at *5 (N.D. Ill. Oct. 9, 2018) (approving $700 hourly rate in FLSA case); *Kurgan v. Chiro One Wellness Centers LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015); *Williams v. Neil's Food, Inc.,* No. 13–cv–2108, ECF No. 25 (N.D.Ill.Dec. 19, 2013) (approving hourly rates between $500 and $650); *Martinez v. Flood Control, Inc.,* No. 11–cv–8841, ECF No. 24 (N.D.Ill. July 16, 2012) (approving $600 rate).

---

[8] *See McCune v. Faneuil Inc.*, No. 4:23-CV-41, 2024 WL 3811411, at *7 (E.D. Va. Aug. 13, 2024) ("Attorney Ash billed at a rate of $600.00 per hour, Attorney Frisch billed at a rate of $650.00 per hour, and Attorney Rodriguez billed at a rate of $400.00 per hour. In light of the relevant *Johnson* factors, such as time and labor expended, the amount in controversy and the results obtained, experience and skill of counsel, and attorneys' fees awards in similar cases, the Court finds that these rates are reasonable").

Critically, as noted above, the rate requested under the Agreement will be significantly lower when all of the work on the case is completed through the settlement approval and settlement administration process. Ash Decl. at ¶ 47.

Accordingly, the hourly rate sought in this case, which is based on a negative multiplier, is reasonable and should be approved.

## VII.    CONCLUSION

For all of the reasons stated herein, Plaintiffs respectfully request that the Court issue an order substantially similar to the Proposed Order emailed to the Court: (1) approving the Parties' $190,000.00 Agreement as fair, adequate, and reasonable; (2) approving the payments to the Settlement Collective; (3) approving service awards of $5,000.00 to Plaintiff Egan and $3,000.00 each of the other Named Plaintiffs for their service to the collective; (4) approving Plaintiffs' request for attorney fees in the amount of $110,613.69 for attorneys' fees and litigation costs of $12,386.31; (5) ordering that the case be dismissed without prejudice and permitting either party reopen the case if there is a breach of the Agreement; and (5) ordering that the dismissal be converted to a dismissal with prejudice upon the completion of all payments by Defendants, as provided under the Agreement.

Dated: February 17, 2025          Respectfully Submitted,

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*Admitted*)
43000 W. 9 Mile Road, Ste. 301
Novi, Michigan 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 027777) (*Admitted*)
55 E Monroe Street, Suite 3800
Chicago, IL 60603
Phone: (954) WORKERS

Fax: (954) 327-3013
AFrisch@forthepeople.com

**RODRIGUEZ LAW, PLC**
*s/ Oscar A. Rodriguez*
Oscar Rodriguez (P73413) (*Admitted*)
402 W. Liberty St.
Ann Arbor, MI 48103
Phone: (734) 355-5666
oscar@orodlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Oscar A. Rodriguez*